WRIGHT, J.
The unusual excitement within the bar, whenever this case is called up, the uncommon warmth and the unmeasured and free terms indulged in by counsel while remarking upon our former decree, the great variety of interest involved'in this controversy, all seem to call upon us for an examination more minute and detailed than is usual.
The two applications before us, require an examination of the whole case made, though so far as the errors complained of in the decree relate to what appears on the face of the record, the complainant has a right to file his bill of review independent of our *leave; yet as an order to stay proceedings is applied for, we [533 must look into the whole case.
In the bill before us, the administrator sets forth the original bill, the finding of the court, and the decretal order, and then proceeds to state:
*548 1. That he was appointed administrator of the estate in April, 1833, so recently before the decree, that he had no opportunity of examining the papers of the former administrator, or of preparing for his defence.
2. That since the hearing, he has ascertained the agreement between Piatt and the heirs, of the 14th May, 1831, restraining Piatt from resorting to any other portion of the estate of St. Clair, than that held by the Bank of the United States, which was complete without the concurrence of the bank or the other creditors.
3. That in consequence of said agreement, the heirs and administrators made no farther defence.
4. That he, the administrator, believed St. Clair’s. estate could not be affected, beyond the land held by the bank, but has since been informed it may be.
5. That he understood, that he was appointed administrator pro forma only, and that he was under said agreement, precluded from making defence.
Among the affidavits exhibited with the bill, are the following:
1. Of S. R. Miller, stating that Lewis, the attorney, told him in 1833, of the agreement to proceed against the bank property only, and that he has ever since regarded Piatt’s claim as only asserted against that property, and has so told all that inquired of him.
2. Of D. Gano, that Lewis told him the same thing, and that ever since he, as purchaser and creditor, has always been satisfied with that course, and has frequently expressed himself so to others.
3. Of John St. Clair, that the agreement was entered into at Lewis’s solicitation, and the answers afterwards withdrawn, and that he never heard Lewis say the bank was to become a party.
4. Of D. Corwin, that being about to purchase, he was informed by Lewis the'title was good, and he would as soon purchase under it as any other title whatever.
5. Of Zerg, that being about to purchase he called on young Piatt and G-wynne to examine the title, and was informed of the agreement to charge the bank, and that the title was good.
To this there is a counter affidavit of Gwynne, that the information to Zerg was given by him, not Piatt, and that he never was attorney for Piatt.
534] *Upon these papers and bill, it is insisted that the decree is erroneous.
1. In declaring the sale by the former administrator fraudulent, because there has been since found among Lytle’s papers, the answer *549 ■which he had prepared in the suit, which he forebore to file, because in his opinion, the agreement estopped him from proceeding except against the bank. The answer denies his collusion with the heirs.
It is singular that the present administrator, who claims to have only been appointed pro forma, and, as it would seem, took his official oath pro forma also, should now swear that he had no time to prepare his defence, that he has since ascertained the agreement of 1831, and has now discovered the answer of Lytle prepared in this case, but withheld from the files, in consequence of the agreement. It is indeed singular, and there must be some interest impelling him forward not within our view, and wholly disconnected with his duty as administrator. At the term before the last, the court ordered the restoration to the files of the answer and other papers withdrawn. This order occasioned, at the time, some feeling at the bar. The argument, afterwards, by the same counsel who still appear, was elaborately conducted in writing and print, for the heirs and administrators, as well as the bank, in which the agreement of 1831 was very much canvassed and relied upon; the agreement itself, an exhibit in the cause, was fully examined and acted upon by the court, and, moreover, especially embraced in the decree, was published in the report of the case, and had been before printed at length in the book submitted to the court, as containing the evidence and one of the arguments in the case.
In making the affidavit, therefore, that this paper has since been discovered, the present complainant shows either great inattention to his duties, and to the progress of the cause, in which his answer was filed before the cause came on to hearing, or counts much upon the inattention or forgetfulness of the court, if it be supposed that with all the facts before us, we can be influenced by the allegation in the present bill made under such circumstances. I attribute no intentional error to the administrator; from all I have ever heard of him, I should esteem him an honest man. But it seems heedless, and too much mere form, to swear to such a state of facts. It shows on his part confidence in his counsel, which should not have been used to place him in such a condition; and if there be other interest involved here than that of the heirs, we feel great surprise that counsel should place a claim in the attitude of this one before the court, and the more so as the heirs are in coui't to *defend themselves. A reference to the exhibited answer of [535 Lytle, the former administrator, said to have been prepared in this case, but withheld from the files, in consequence of the agreement of 1831, does not present a view more favorable. Piatt’s suit was *550 commenced in 1828 — this newly discovered answer bears date in-182'7, the year before the suit was commenced. The agreement which it is alleged prevented this answer from being filed, was not entered into until four years afterwards. Is it intended seriously to maintain that Lytle prepared this answer in anticipation of a suit, and was prevented from using it by anticipating the agreement of 1831? It is evident the answer was not prepared in the suit in question, but in some other of the controversies between the parties to which reference has been made. New, as this course of proceeding is, it presents no neio matter in the cause, nor any reason for an order to stay the proceeding on the decree sought to be reviewed.
2. The second error complained of in the decree embraces several distinct propositions.
1. That since the decree the complainant is informed that a large part of the sum allowed was barred by the statute of limitations.
2. That Thomas Morris can prove the payment of these notes so allowed.
3. That the complainant is informed no time was had to procure his testimony.
4. That the judgment was confessed by Lytle under the impression that he could pay in Farmers’ and Mechanics’ Bank notes worth about five cents on the dollar.
5. That the other claims were not reduced to judgment.
6. That Piatt has already more than an equivalent for his demand.
There is nothing here but what was, or might have been known before. The matters contained in the third, fourth, fifth, and sixth propositions were fully urged at the hearing and considered by the court, and the same matters, as well as the two notes in the paper A. were fully investigated before the jury at the trials had upon the mortgage. The items of Piatt’s payments for St. Clair were no secret — they were known to the former administrator and the heirs, and'were fruitful of litigation between them. Morris’s name appeared as a witness on the two claims in the statement A. then as now. He was well known and resident in an adjoining county, yet it is now insisted on oath that no time has been afforded to pro’eure his testimony. It is also asserted that no trial was ever had upon these notes, which is directly against the evidence in the 536] *cause. It excites our special wonder that counsel should so far forget what is due to themselves and to the court, as to present papers of this character to the court, with or without oath. There *551 must be something in this case -which puts at rest their usual astuteness and sense of propriety. The'paper A. asserts in broad terms that the allowance of this claim is utterly absitrd! Utterly absurd to allow a claim which had been so frequently examined and had been before allowed by the parties concerned, the jury, and other courts! There is no signature to this modest declaration presented by counsel, professing respect for the court, which is pressed upon its consideration, backed by the oath of the complainant, but the hand is familiar to us. It is that of Kirby, the witness whose depositions have been so frequently before us. Were it not for the consideration that there is some hidden influence connected with this case particularly exciting to counsel, we should be disposed to take measures to prevent another presentation of such a paper to the court, particularly as this is the second time it has been before us. As to the statute we have already repeatedly determined in this case, that as to claims of that date and kind there was no statute, and our ■convictions remain unshaken upon that- point. This claim, then, was before the former administrator, about the time it accrued— was embodied in the former litigation in chancery — was before the juries in the trials had on the mortgage — and before this court on the hearing of this cause. There is now no offer to present anything new upon it, but we are told it should be re-heard, because it was utterly absurd to allow it.
3. The third error assigned is, that the court declared the •alienees of the intestate’s heirs did not take the estate discharged ■of the lien of the debts of the ancestor. We are unable to see the ■error of the decree in this particular, or that the claim presents anything new or not before under consideration.
4. The other errors assigned are, that the court found the amount without the report of a master, without a trial at law, and without giving the administrator a fair opportunity to be heard, and allowed vastly too much as due Piatt. The law does not require a chancellor to send contests about facts to a master or to a jury, of course. He may either send to a jury, refer to a master, or ascertain facts himself, at his option. In this case a reference was deemed unnecessary, because the ease before us on paper, showed the amounts, and there was little or no dispute, even amongst counsel as to sums and -dates. The court therefore supposed, when it settled the principles governing the case, that, as it was but the work of a few min*utes, to make the calculations, and inasmuch as the court sat [537 but once a year, it was better to do it at once, than to subject the parties to the expense and delay of a reference. The calculations *552 were made, and with the opinion of the court, handed to the counsel in order that a decree might he drawn up. The decree was submitted without a word of objection. One, at least, of the counsel now engaged in urging this review, was present, aiding to draw the. decree. The impropriety of the course pursued, is not realized by us, nor do we see the error of it. The report of the master, procured by the agreement of the parties at this term, confirms the finding of' the court, though increasing the amount a trifling sum.
So much feeling has shown itself upon this subject, that I am disposed to examine the matter yet a little farther. It was a conceded matter on the former trial, and the fact is not now disputed, that. the claims settled by Piatt for St. Clair, amounted to the gross sum-of $23,875.49 on the 14th of October, 1820. The amount due by Piatt to St. Clair on the mortgage was ascertained by the jury in-May, 1834, to be $10,872.24. In 1821, the administrator confessed! a judgment to Piatt for $17,741.12, intended to cover what was due, which he expected to pay in Farmers’ and Mechanics’ Bank notes-then depreciated. It does not appear that he ever after had a dollar of these notes, or offered to pay a dollar, and up to this day, it is not pretended any of the notes have been procured or offered. If we take the judgment confessed and add the interest till the decree, the amount will be $30,538.40, or $7,624.43 more than the court, found. In 1824, the matter was finally submitted to the jury on the-mortgage, and they found a balance due Piatt, besides costs of $20,113.41 — the interest added to which to the time of the decree-would make the sum of $30,974.61, or $8,060.64 more than the court found. In 1826, the administrator in applying for leave to sell land, officially represented as then due Piatt $32,000, which, with-the interest from then to the time of the decree, wonld make $44,-440, or $22,913.97 more than the court found. By the agreement, in 1831, the heirs and Piatt when together, set down his claim in May, 1828, at $20,113.41, which with interest would make at the-date of the decree, $26,147.41, or $3,233.44 more than the decree. With all these facts before the court, standing out in full relief' before any one examining the papers, we are now told the court has hurriedly estimated the amount; and the administrator swears or affirms pro forma, that he has not had an opportunity for a fair hearing. He thinks the heirs at law injured, and is anxious to-protect their interest against the blunders of his predecessor, the 538] ^admission of thebeirs in their agreement, and the errors of the court; he files a bill of review, making the heirs whose interest he-is anxious to protect defendants, in order to force upon them the *553 -correetion! Verily these proceedings are full of novelties that ex•cite our wonder. We feel how liable we are to err, but in this matter the weight of evidence is, that whatever error there is in amount, is against not in favor of the complainant Piatt, and not to be complained of by the administrator of St. Clair.
Upon the whole, we discover nothing in this bill of new matter, to require of us leave to file the bill of review on that ground, nor do we see sufficient reason in the bill of review, or the facts presented, to order the proceedings on the.former decree to be stayed. Both applications are refused.